## Sizemore v. Commonwealth.

(Decided October 16, 1925.)

## Appeal from Breathitt Circuit Court.

1. Criminal Law—Affidavit in Support of Motion for New Trial to be Taken as True on Appeal in Absence of Attack.—Facts set forth in evidence urged in support of motion for new trial, on the ground of bias of jurors by reason of relationship to deceased, will be taken as true on appeal, where neither the affidavit nor the credibility of affiants is attacked.

2. Criminal Law—Relationship of Two Jurors to Deceased and Family Whether by "Consanguinity" or by "Affinity," Held Ground for Reversal.—Relationship of two jurors to deceased and his family, whether by consanguinity or by affinity, not disclosed by jurors on their voir dire, and unknown to accused until after return of verdict, held ground for reversal, in view of Criminal Code of Practice, sections 209, 210, relative to actual and implied bias of jurors; consanguinity meaning relationship by blood, and affinity as the connection existing, in consequence of marriage, between each of the married persons and the kindred of the other.

3. Jury—When Court in Absence of Statute May Sustain Challenge to Juror by Reason of Relationship.—In the absence of statutory provisions as to the degree of relationship of a juror which will sustain a challenge for cause, the question is to be determined by the court according to the probability of prejudice resulting therefrom.

4.  Jury—Parties Litigant in Jury Trials are Entitled to have their
    Causes Heard by Unbiased and Unprejudiced Jurors.—Parties
    litigant in jury trials are entitled to have their causes heard by
    unbiased and unprejudiced jurors.

A. H. PATTON and A. S. JOHNSON for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K.
BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

The appellant, Andy Sizemore, was indicted in the
Breathitt circuit court for the murder of Albert Noble,
and on his trial in that court for the crime, by verdict of
the jury, was found guilty thereof and his punishment
fixed at imprisonment in the penitentiary for life. By
this appeal he seeks the reversal of the judgment ren-
dered by the trial court in approval of that verdict and
directing its enforcement.

Only two of the several grounds upon which the ap-
pellant based his motion for a new trial made in and
overruled by the court below, are relied on in the brief of
appellant's counsel for the reversal of the judgment of
conviction. The first of these two grounds is, that he was
prevented from receiving a fair and impartial trial be-
cause of the bias and prejudice entertained towards and
against him by two members of the jury, viz., S. P. Car-
penter and William Griffith, arising, as alleged, out of the
relationship sustained by each of them to Albert Noble,
the victim of the homicide in question, and the family of
the latter.

On the hearing of the appellant's motion for a new
trial by the circuit court, it was established by the affi-
davit of one Cola Hudson, purporting to be based upon
his acquaintance with the jurors, Carpenter and
Griffith, and knowledge of their family connections and
that of the deceased, in which, among other things, it is
stated that Carpenter "is an uncle of Sam Noble, and
that Sam Noble is an uncle of the deceased, Albert
Noble;" that Griffith's "son, Bob Griffith, married a first
cousin to the deceased, Albert Noble." The above state-
ments contained in the affidavit of Hudson were corrob-
orated by the affidavit of the appellant, which, however,
as to those statements was based upon information re-
ceived by the affiant after the trial of his case. It was,
however, substantially further stated in the latter affi-
davit that though Carpenter and Griffith, the two jurors

named, were each fully questioned on a *voir dire* examination under oath, with respect to their qualifications to sit as jurors in the trial of the appellant's case, neither of them disclosed the relationship then existing, as above stated, between him and the deceased or between his family and that of the deceased; that the appellant did not know that either of such relationships existed at the time Carpenter and Griffith were accepted or sworn as jurors, or during the trial; and that neither relationship did, in fact, become known to him or his counsel until after the return of the verdict finding him guilty of the murder of the deceased, and; furthermore, that Sam Noble, said in the affidavits to be an uncle of the deceased and the nephew of the juror Carpenter, was present throughout the appellant's trial, manifesting his interest in the prosecution.

Neither by affidavit, nor other method, did the Commonwealth introduce or offer any evidence to contradict that furnised by the affidavits filed in behalf of the appellant referred to, or to attack the credibility of the affiants, therefore the facts set forth therein must be accepted by us as true. With this in view, the question under consideration can, we think, be readily solved.

It is difficult to determine from the statements of the affidavits the precise nature of the kinship of the juror Carpenter to the deceased, *i. e.*, whether it was one by consanguinity or by affinity. If it is the meaning of those statements that Carpenter was an uncle of the father of the deceased and therefore a great uncle of the deceased, the relationship was one by consanguinity; but if it is their meaning that Sam Noble, the uncle of the deceased, of whom Carpenter is said to be an uncle, was but a half-brother of the father of the deceased, that is, the son of the same father but of a different mother, who is, or was, a sister of Carpenter, then the kinship of the latter to the deceased was not one of consanguinity, but of affinity.

By Bouvier's Law Dictionary, vol 1, page 97, consanguinity is thus defined: "Relationship by blood," and affinity as "The connection existing in consequence of marriage, between each of the married persons and the kindred of the other." It is obvious from these definitions that the relationship shown to have been sustained by the juror Griffith to the deceased and his family was one by affinity. It is unnecessary, however, for us to classify the relationship here shown to have existed be-

tween each of the jurors, Carpenter and Griffith, and the deceased and his family, but sufficient to declare that, whether as to either it was a relationship by consanguinity or by affinity, such relationships manifestly were and are of a character that disqualified them as jurors in this case, and had they in proper time been made known to the appellant or the trial court, would, because of the bias, actual or implied, arising in contemplation of law from their existence, have required the exclusion of Carpenter and Griffith from service on the jury.

Both actual and implied bias are defined by the Criminal Code of this state; the first in section 209 and the second in the several subsections of section 210 of that volume. And in the latter section relationship by affinity as well as by consanguinity is named as a ground of disqualification. We have in this state no statute prescribing the degree of relationship within, or beyond, which the juror will be disqualified; and where this is the case we know of no better rule for the courts to be guided by than that announced in 35 C. J., section 331:

> "In the absence of statutory provision as to the degree of relationship, the question is to be determined by the court according to the probability of prejudice or partiality resulting therefrom, and the court may, on the ground of probable prejudice, sustain a challenge to a juror, although the relationship is not within the degree prescribed by statute as rendering the juror incompetent, or where the degree of relationship is uncertain, or where there is any family connection reasonably calculated to prevent the juror from being impartial, although not amounting to actual relationship. . . ."

While in numerous cases of homicide we have refused to reverse judgments of conviction because of the failure of the circuit court to grant appellant a new trial on account of bias or prejudice on the part of one or more of the trial jury, alleged to have resulted from their relationship to the person killed (Miracle v. Commonwealth, 148 Ky. 483; Mansfield v. Commonwealth, 163 Ky. 288), it will be found from an examination of those cases that the ruling of the trial court in refusing the appellant the new trial was based on evidence, furnished by the testimony of the juror or others, which contradicted that introduced by the appellant in support of the motion.

But in the case at bar we must be controlled by the record before us; and in the absence of any evidence that might tend to prove that the jurors, Carpenter and Griffith, were not related to the deceased, or his family, as stated in the affidavits filed in support of the appellant's motion for a new trial, or if so related, that they were ignorant of it, or that such relationship was known to the appellant when he accepted the jury by which he was tried, we can but hold that the overruling of the appellant's motion for a new trial by the circuit court must be declared reversible error. For as said in the recently decided case of Ellis and Whobrey v. Commonwealth, 207 Ky. 162:

> "It is fundamental, and goes to the very root of the administration of justice, that parties litigant are, in jury trials, entitled to have their causes heard by unbiased and unprejudiced jurors." Leadingham v. Commonwealth, 180 Ky. 38; Brooks v. Commonwealth, 144 Ky. 107; Dailey v. Gaines, 1 Dana (31 Ky.) 529.

No reason is apparent for our passing on the appellant's contention with respect to the alleged newly discovered evidence, which was also made a ground for the new trial refused by the circuit court. As the judgment of the circuit court must be reversed upon the ground first considered, and the case remanded to that court for another trial, the appellant will be afforded ample time to procure the evidence referred to for such trial. Other rulings of the trial court complained of in the record as error, but which have not been discussed or urged in the brief of appellant's counsel as grounds for reversal, will not be passed on; and in view of the retrial of the case yet to occur, we have refrained from discussinig the evidence contained in the record, or expressing any opinion as to its weight or effect.

For the reasons indicated, the judgment of the circuit court is reversed and cause remanded to that court with directions to set it aside and grant the appellant a new trial, and for such further proceedings as may not be inconsistent with the opinion herein.