**Bernes B. STONE, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Feb. 17, 1967.

Rehearing Denied Oct. 13, 1967.

William E. Rummage, Owensboro, for appellant.

Robert Matthews, Atty. Gen., Robert D. Preston, Asst. Atty. Gen., Frankfort, for appellee.

HILL, Judge.

Appellant was convicted and sentenced to four years in prison under an indictment charging him with maliciously burning a store building, denounced by KRS 433.020.

We go directly into the numerous questions relied on by appellant for reversal after stating the following salient facts about which there is no dispute. The fire occurred January 18, 1964, in a two-story building, which appellant did not own but the first floor of which was rented and in use by appellant in connection with a retail jewelry business. Appellant left the store about 5:00 p. m., and the fire was discovered approximately thirty minutes later. He was in debt; his business was not thriving; and he had obtained a large insurance policy on his merchandise two months previous to the fire.

First it is insisted by appellant that the court should have instructed the jury on the question of whether appellant consented to the search of the ruined premises. John A. Kennedy, a private investigator for Allstate Insurance Company, appellant's insurer, testified appellant consented to his inspection of the premises after the fire. This is denied by appellant. It is argued that the rule in Mattingly v. Commonwealth, 202 Ky. 343, 259 S.W. 710, required the submission of this question to the jury. We find no fault with the rule in Mattingly; but for reasons to be later discussed herein in connection with the nice constitutional question of evidence obtained by a private citizen as distinguished from evidence obtained by an officer of the law, it will not be necessary to apply the rule in Mattingly.

Assigned as error was the failure of the trial court to allow Randall Aull to testify for appellant. This witness admitted he was in the courtroom at the time two of his fellow firemen testified on behalf of the Commonwealth. An order authorized by CR 43.09 was duly entered providing for the exclusion of the witnesses from the courtroom. This section of the Rules, as well as its predecessor 601 of the previous Code, has been uniformly construed to give the trial judge a broad discretion in the matter of permitting or refusing to permit a witness to testify who has

violated the rule. See Murphy v. Phelps, 241 Ky. 339, 43 S.W.2d 1010, and 88 C.J. S. Trial § 65.

■ The avowal of the witness Aull indicated he was the only one of the three firemen who reached the second floor, where the Commonwealth's witnesses inferred "accelerant" fumes must have emanated from. Aull's avowal stated he did not smell fumes from the second floor window, but he said he "didn't stay too long because the smoke came bellowing out then," and "Captain Freeman hollered and told" him "to come off the ladder." This testimony had a slight tendency to contradict the negative testimony of his two fellow firemen, who said they did not notice fumes. But the nature of Aull's testimony was not so vital or convincing as to require the trial court to allow it. Certainly, we cannot say the trial judge abused his discretion. In any event, the order for exclusion was violated, and it was within the sound discretion of the trial court to allow or not permit the witness to testify.

■ Next appellant contends the court erred in allowing the introduction by the Commonwealth of certain photographs and "charred wood." Appellant moved for the production by the Commonwealth of all photographs and articles to be used on the trial pursuant to the provisions of RCr 7.24. The Commonwealth did produce a number of articles and some photographs, but the "charred wood" was at that time en route to or from Chicago, Illinois, for testing and was not delivered to attorney for appellant. In fact, these items were in the possession of Allstate Insurance Company and its agent. Appellant, himself, authorized Allstate to take possession of the "charred wood," although he denied this at the trial. In any event, appellant had the right under RCr 7.24 for the production of these articles. Furthermore, it cannot be said that the articles desired by appellant "were in possession of" the Commonwealth at the time the motion was made under RCr 7.24.

Complaint is made of the ruling of the trial court, after the jury was empanelled and sworn, allowing the Commonwealth to amend the indictment. The original indictment charged appellant with "setting fire to and burning the storehouse known as Stone Jewelers" and listed KRS 433.020. The amendment added the following charge: That he "aided, counselled or procured the burning of a storehouse," and again cited the statute.

■ An indictment may be amended under RCr 6.16 "any time before verdict" providing the "substantial rights of the defendant are not prejudiced." Instruction number one followed the language of the statute, and the verdict found appellant guilty under instruction one. In our view, the substantial rights of the defendant were not prejudiced by the amendment. See Brown v. Commonwealth, Ky., 378 S.W.2d 608 (1964) and Hines v. Commonwealth, Ky., 390 S.W.2d 152 (1965).

This brings us to the fifth error assigned by appellant, in which he contends all the testimony of the witness John A. Kennedy should not have been admitted for the reason Kennedy searched his premises without his consent and without a search warrant.

The Commonwealth counters to this argument by saying, first, Kennedy got the evidence by "consent" of appellant; second, by taking the untenable position that appellant had no possession of the premises after the fire, and that the possession reverted to appellant's landlord; and third, that Kennedy, being a representative of Allstate, was a "private individual," and evidence obtained by him as a private citizen does not violate section ten of the Constitution of Kentucky or the fourth amendment to the Constitution of the United States.

■ The first part of the Commonwealth's counter argument will be answered in the discussion of the third argument. The second counter argument, relative to possession of the wrecked and charred

building, is without merit. It is sufficient to say that appellant had possession at least for a reasonable time to enable him to recover any property not destroyed by fire. He may have had possession for as long as the rent was paid or until a new building could be constructed.

■■■ The third counter argument is one that may have merit. But in this jurisdiction, and in many others, evidence obtained by private individuals by search or observation has not been excluded under section ten of our Constitution and the fourth amendment to the Constitution of the United States. See Chapman v. Commonwealth, 206 Ky. 439, 267 S.W. 181, from which we quote:

"It has often been written that that section (10) was directed at the sovereignty, acting through its public officers; and the evidence thus disclosed to public officers in an illegal search or seizure has been declared incompetent against the defendant to the end that the constitutional provision may be made more effectual than if he was left alone to his remedy in trespass against the officer. It has never been held, however, to embrace or be applicable to a private individual who, through a process of spying or other form of trespass, discloses evidence against another. Manifestly as against such private individual the aggrieved party is left to his remedy in trespass."

The rule above discussed is treated in 50 A.L.R.2d, p. 571, in this manner:

"The exclusionary rule stated in section 7(a), supra, under which evidence obtained by an unlawful search and seizure is not admissible against an accused, has been held not to apply where the unlawful search was made by a private individual acting on his own initiative."

Cases cited under the foregoing section of A.L.R. include those in California, Mississippi, Missouri, Oregon, the United States in Burdeau v. McDowell, 256 U.S.

465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921), and our own state of Kentucky.

Also in 16 Am.Jur.2d, Constitutional Law, section 557, p. 960, it is written:

"It is the established general rule that the provisions of the due process clause in a state constitution and in the Federal Constitution are inhibitions upon the power of government and its agencies, not upon freedom of action of private persons."

This jurisdiction has continued to follow Chapman, supra, in Gilliam v. Commonwealth, 263 Ky. 342, 92 S.W.2d 346, and in many other cases. See also the recent case of United States v. Goldberg, 3 Cir., 330 F.2d 30 (1964), certiorari denied July 1, 1964. We can discern nothing at present or on the horizon to justify a departure from the sound constitutional law announced in Chapman, supra, and later cases. It is without reluctance that we follow that rule.

■ Appellant contends he is entitled to a reversal for failure of the trial court to sustain his motion for a new trial on the ground the jury reached its verdict by lot. Appellant filed affidavits of three of the jurors; the Commonwealth filed affidavits of eleven of the jurors. Appellant's affidavits did not fix the time at which each juror submitted on separate slips of paper his preference for the length of term of the sentence. The affidavits for the Commonwealth showed the balloting did not take place until all twelve jurors had voted unanimously that appellant was guilty as charged. This did not amount to a quotient verdict. See Cox v. Commonwealth, 255 Ky. 391, 74 S.W.2d 346, and Graham v. Commonwealth, 310 Ky. 773, 221 S.W.2d 677, wherein it is said:

"This method in arriving at verdicts has been repeatedly condemned by us. However, where it appears, as in the instant case, that the jury unanimously agreed upon the guilt of the accused and then arrived at a quotient verdict which

was subsequently and independently adopted by all members of the jury, we have written that the verdict was not one by lot within the meaning of § 271 (3) of the Criminal Code of Practice."

The next question raised by appellant involves the sufficiency of the evidence to convict. He maintains he was entitled to a directed verdict. Here it is necessary to state facts established by the evidence. Appellant's own brief summarizes the evidence substantially. We quote therefrom:

"(1) That there was a fire at about 5:30 on January 18, 1964, which subsequently consumed the building and contents of Stone Jewelry Store.

"(2) That the appellant had the opportunity to set the fire.

"(3) That he could have been there when the fire started.

"(4) That there was an accelerant used on the fire.

"(5) That the appellant was on a cash basis with suppliers.

"(6) That he had recently taken out a substantial insurance policy with Allstate Insurance Company covering the contents and improvements.

"(7) That the appellant owed a substantial sum of money, although he had a good many assets, and had been sued on a number of accounts.

"(8) That if the appellant did not set the fire, he could have known who did set it."

To this list we may add that the evidence for the Commonwealth described the difference between the burning process on wood where an accelerant was present and that resulting from natural burning and the difference in the coloration of charred wood by burning due to accelerant and that resulting from burning without it. A witness with vast experience, covering a period of more than twenty years, from the holocaust at Hiroshima to the present time, gave convincing evidence that the building was set afire at three separate places. He explained that some of the fire "burned down," indicating that the flames followed a liquid accelerant as it ran through the floor cracks and down the walls, and that natural fire always burns upward from the starting point.

It is concluded the trial court properly submitted the issue to the jury. Hines v. Commonwealth, Ky., 390 S.W.2d 152 (1965). Baker v. Commonwealth, Ky., 307 S.W.2d 773 (1957).

Appellant's motion for change of venue was overruled. He contends this was error. KRS 452.220 outlines the procedure for obtaining a change of venue. It states:

"(2) If the application is made by the defendant, it shall be made by petition in writing, verified by the defendant, and by the filing of the affidavits of at least two other credible persons, not kin to or of counsel for the defendant, stating that they are acquainted with the state of public opinion in the county objected to, and that they verily believe the statements of the petition for the change of venue are true."

The petition was not verified, nor was it sufficient. It is copied herewith.

"Comes the defendants and each of them and move the court for the changing of the venue for the prosecution and trial of these actions and each of them. In support of this motion there is attached hereto the affidavits of J. J. Taylor and Parvin Hidenrite."

(Signed by attorney for appellant.)

The affidavits referred to in the petition stated only conclusions; they referred to unfavorable news media but did not state any facts in connection therewith. The

petition, including the affidavits, was utterly insufficient to require or justify a change of venue. See Brunner v. Commonwealth, Ky., 395 S.W.2d 382 (1965), White v. Commonwealth, Ky., 394 S.W.2d 770 (1965). Appellant contends that the affidavits filed by the Commonwealth were too late; that they were filed after the court ruled on his petition for change of venue. It is not clear whether the court undertook to allow the Commonwealth to file counter affidavits after its ruling and considered what the Commonwealth announced it would include in the affidavits, but it is unnecessary to decide this question since we have concluded the petition was not sufficient.

Objection is made to the ruling of the trial court in allowing the witnesses Gillingham and Phillips, state arson detectives, to testify after it was shown they did not visit the scene of the fire for thirty days after the fire. It is urged that KRS 227.-270 (authorizing investigation of fires) is unconstitutional and that the testimony of these two witnesses is too remote due to a change in condition of the premises.

The remoteness of the inspection goes to the credibility and weight to be given to their evidence.

The investigation of fires is clearly a proper exercise of the police powers of the State. We have no difficulty in concluding that KRS 227.270 is constitutional and does not violate either the fourth, fifth, or fourteenth amendments of the Federal Constitution or section ten of the Constitution of Kentucky. See City of Louisville v. Thompson, Ky., 339 S.W.2d 869, and Moore v. Ward, Ky., 377 S.W.2d 881.

The final question raised by appellant concerns the ruling of the trial court in excusing the prospective juror Alexander who stated on voir dire he had been a close personal friend of appellant for thirty-five years, although he thought he could give both sides a fair and impartial trial. A trial judge is given broad discretion by RCr 9.36 to excuse a prospective juror for cause. See Carson v. Commonwealth, Ky., 382 S.W.2d 85. It is concluded the trial court was amply justified in excusing this juror.

The judgment is affirmed.

WILLIAMS, C. J., and MILLIKEN, MONTGOMERY, OSBORNE, and STEINFELD, JJ., concur.

PALMORE, J., dissents.

PALMORE, Judge (dissenting).

I dissent from that portion of the opinion which holds that the constitutional protection against unreasonable search and seizure is of no avail if the search was conducted by a private citizen not acting at the instance of an officer or agency of the state. When the state condones an illegal search by using its fruits in a criminal prosecution it becomes an accessory, and bears the ultimate responsibility for depriving the offended person of that which Const. § 10 and the Due Process Clause of the 14th Amendment to the Constitution of the United States have guaranteed him. If only in this small way, I am proud to join the company of Brandeis and Holmes. Cf. dissenting opinion of Mr. Justice Brandeis in Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1948, 13 A.L.R. 1159 (1921).