# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.



# Supreme Court of Kentucky

2007-SC-000214-MR

DATE 9-11-08 Ella Grout, D.C.

BLAKE HADDIX        APPELLANT

V.        ON APPEAL FROM BREATHITT CIRCUIT COURT
HONORABLE FRANK A. FLETCHER, JUDGE
NO. 03-CR-000139

COMMONWEALTH OF KENTUCKY        APPELLEE

## MEMORANDUM OPINION OF THE COURT

## VACATING AND REMANDING

### I. Introduction

A Breathitt County jury convicted Blake Haddix of murder[1] and of second-degree assault.[2] In accordance with the jury's recommendation, Haddix was sentenced to thirty-five (35) years for murder and five (5) years for second-degree assault, to be served consecutively, for a total of forty (40) years in prison. Appealing to this Court as a matter of right,[3] Haddix argues the circuit court erred by: (1) failing to conduct a hearing into the possible impropriety of two jurors; and (2) failing to consider evidence of non-disclosure by a third juror. Finding the circuit court abused its discretion in failing to hold a hearing, we vacate the judgment of the court and remand this matter for a hearing to determine whether Haddix's allegations of juror misconduct are true and, if so, whether a new trial is warranted.

---

[1] Kentucky Revised Statute (KRS) 507.020.
[2] KRS 508.020.
[3] Kentucky Constitution §110(2)(b).

## II. Factual Background

On the evening of September 5, 2003, Estill Mullins and his father, Woodrow Mullins, were sitting on Estill's front porch in Breathitt County. Appellant Haddix, who had known Estill and Woodrow for some time, arrived on a four-wheeler to visit with them. As they talked, the three men drank beer. After Woodrow came inside, Estill's wife, Gladys, went to the door and called Estill inside. As Estill was closing the front door behind him, he was struck by a bullet that came through the window of the front door. Estill fell to the floor, bleeding from a wound to the head.

Having heard the shot, Gladys headed for the back door so that she could leave and call the police. As the Mullins's home had no phone, Gladys intended to drive a short distance to her sister's house. Gladys heard two more shots as she drove away.

As Gladys was leaving, Woodrow grabbed a .410 gauge shotgun and went outside to confront Haddix. Haddix shot Woodrow twice, with one round traveling from the chest to the neck and the other round entering the abdomen.

Officers arrived to find Woodrow lying dead on the front porch and Estill lying in the hallway bleeding from a head wound. Officers also discovered Haddix lying in the driveway. Haddix appeared to be very intoxicated and had one hand near the grip of a revolver sticking out of a pocket. Haddix was taken into custody and a .32 caliber revolver was recovered.

Officers also recovered the .410 gauge shotgun that was found lying near Woodrow's body. The shotgun had one live round in the chamber. Testimony at the preliminary hearing indicated no spent shotgun shells were recovered from the scene. Further, while officers were unable to recover the round that struck Estill, they did

2

recover both of the rounds that struck Woodrow. Ballistics tests indicated both rounds that struck Woodrow were fired from the .32 caliber revolver recovered from Haddix.

At trial, Haddix confirmed that he drove to the Mullins's residence on a four-wheeler, and that the men sat outside drinking beer. However, Haddix claimed that the men argued over a timber cutting contract. While Haddix denied shooting Estill, he claimed he shot Woodrow in self defense. Haddix testified that Woodrow came out of the house with the shotgun and fired it. As Woodrow was reloading, Haddix warned him not to continue. When Woodrow aimed the shotgun at him, Haddix shot Woodrow.

Haddix's four day trial began on September 26, 2006. While thirteen (13) jurors were initially seated, one juror was excused on the third day of trial when she advised the court that she was an acquaintance of James Haddix, a relative of the defendant. The remaining jurors returned a verdict convicting Haddix and recommending a prison term of forty (40) years.

### III. Analysis

All claims of error by Haddix relate to juror misconduct. In particular, Haddix has argued three jurors failed to disclose information during voir dire. In his first post-trial motion for a new trial, Haddix raised concerns that one juror failed to disclose that he was a convicted felon and a non-resident of Breathitt County, and that a second juror failed to disclose that she or a family member had been the victim of a crime. In a subsequent motion, Haddix alleged that a third juror failed to disclose her relationship to the victim. Specifically, Haddix alleges the juror's sister was married to the first cousin of the victim. Haddix contends he did not learn of the information until after trial and, thus, was denied a fair trial.

3

Following the first motion, the circuit court agreed to consider the matter and entered an order directing the Kentucky Bureau of Investigation (KBI) to investigate and report its findings to the court within sixty (60) days. Apparently, no investigation took place, nor was a report filed. Nearly three months later, the parties appeared before a newly elected judge on Haddix's motion to be released on bond. The judge denied the request for bond, as well as Haddix's pending motions for a new trial based on juror misconduct, and set a date for final sentencing. Haddix contends this was error.

This Court has recognized that the right to an impartial adjudicator, be it judge or jury, is basic to a fair trial. See Paenitz v. Commonwealth, 820 S.W.2d 480, 482 (Ky. 1991). Further, we have long recognized that:

> the right of challenge includes the incidental right that the information elicited on the voir dire examination shall be true; the right to challenge implies its fair exercise, and, if a party is misled by erroneous information, the right of rejection is impaired[.]

Johnson v. Commonwealth, 311 Ky. 182, 223 S.W.2d 741, 743 (1949). Underlying this rationale is our conclusion that "the question is not whether an improperly established tribunal acted fairly, but it is whether a proper tribunal was established[.]" Id.

We agree the circuit court erred in failing to hold a hearing on the allegations concerning the alleged misconduct of the three jurors.[4] In Smith v. Commonwealth, this Court recognized the trial court had the option to hold a post-trial hearing to determine allegations of juror bias. 734 S.W.2d 437, 445 (Ky. 1987) (citation omitted). In this case, Haddix brought allegations of juror misconduct. If it is shown that the first juror was a convicted felon or a non-resident of Breathitt County at the time of trial in September of 2006, Haddix would be entitled to a new trial. See Johnson, 223 S.W.2d

---

[4] We do not address the legitimacy of the circuit court's order directing the KBI to investigate. As we have found the original order to be interlocutory, the KBI issue becomes collateral and irrelevant to our consideration. Since the first order was interlocutory, it was subject to reconsideration by the court. Thus, we reject Haddix's claim that collateral estoppel applies to the circumstances present in this case.

4

at 743. In the case of the juror who may have failed to disclose that she or a family member had been the victim of a crime, the court would have discretion, based on the circumstances and the juror's knowledge at the time of the verdict, to determine if Haddix is entitled to a new trial. Likewise, should the third juror be related to the victim as alleged, the court would have the discretion to determine if Haddix has demonstrated implied bias based on a relationship by consanguinity or affinity. Pennington v. Commonwealth, 316 S.W.2d 221, 223 (Ky. 1958). See also Kentucky Rule of Criminal Procedure (RCr) 9.36. However, Haddix terminates the analysis without considering all of the requirements.

> In Gordon v. Commonwealth, this Court recognized that
>
> In circumstances where no challenge is made to juror qualification prior to or during trial and the challenge first occurs after rendition of a verdict, a party seeking relief from the effect of the verdict bears a heavy burden. It is incumbent upon such a party to allege facts, which if proven to be true, are sufficient to undermine the integrity of the verdict.

916 S.W.2d 176, 179 (Ky. 1995). Further, we recognized that "[w]hile we are prepared to grant relief in a proper case, such will not be lightly undertaken and without a substantial basis in fact." Id. (internal citation omitted).

In making a motion for new trial based on juror misconduct, Haddix must show that the juror was questioned concerning the matter; that the juror failed to disclose the existence of the relationship; and that he was not aware of the juror's non-disclosure until after the trial. See Shepherd v. Commonwealth, 269 Ky. 237, 106 S.W.2d 988, 990 (1937) (citation omitted).

Assuming, without deciding, Haddix's allegations can be supported by evidence, the burden then shifts to the Commonwealth to prove the juror's knowledge of the relationship at the time of the verdict. See Pennington, 316 S.W.2d at 224. See also

5

Horton v. Commonwealth, 240 S.W.2d 612, 613 (Ky. 1951). Only after the Commonwealth has an opportunity to respond can the trial court determine if a new trial is warranted. In reaching this conclusion, we have recognized that "where the relationship of a juror to a deceased is remote and unknown to the juror at the time the verdict was rendered, it does not constitute a valid ground for reversal." Horton, 240 S.W.2d at 613 (citations omitted).

Further, in the case of the juror with the alleged relationship to the victim, the circuit court must consider whether the relationship alleged (the juror's sister was married to a first cousin of the victim) exists and was known to the juror. The court must then determine whether implied bias based on consanguinity or affinity has been established. See Davis v. Commonwealth, 271 Ky. 180, 111 S.W.2d 640 (1937) (juror's husband was the uncle of the husband to the mother of the deceased – found relationship not sufficient); Cox v. Commonwealth, 255 Ky. 391, 74 S.W.2d 346 (1934) (one juror was shown to have the following relationships: (1) the juror was the second cousin to the wife of the brother of the deceased; and (2) the juror's wife's uncle married the niece of the deceased – neither relationship was found to be sufficient). Only if the circuit court finds that each of the requirements of the analysis is satisfied is a new trial warranted concerning the allegation that the third juror failed to disclose a relationship to the victim.

In light of the fact that the court failed to hear evidence concerning Haddix's allegations of juror misconduct, we reject the Commonwealth's argument that Haddix failed to meet the heavy burden set out under Gordon, 916 S.W.2d at 179. Until evidence has been presented and ruled upon, it is premature to conclude Haddix cannot meet the required burden.

6

## IV. Conclusion

In light of Haddix's allegations concerning juror misconduct, we conclude the circuit court abused its discretion by failing to hold a hearing to resolve the claims. For this reason, we vacate the judgment of the Breathitt Circuit Court and remand this matter for a hearing to determine whether Haddix's allegations of juror misconduct are true and, if so, whether a new trial is warranted.

Minton, C.J.; Abramson, Cunningham, Noble, Schroder and Scott, JJ., concur. Venters, J., not sitting.

COUNSEL FOR APPELLANT:

Bruce William Francisky
Michael A. Stidham
Stidham & Francisky Law Office
500 Brown Street
P.O. Box 732
Jackson, KY 41339

COUNSEL FOR APPELLEE:

Jack Conway
Attorney General

David A. Smith
Assistant Attorney General
Office of Attorney General
Criminal Appellate Division
1024 Capital Center Drive
Frankfort, KY 40601-8204